UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMALL BAKER,

                Plaintiff,

    v.

JERALD GRANT, et al.,

                Defendants.

Case No. C17-1678-RSL-MAT

REPORT AND RECOMMENDATION

I.     INTRODUCTION

Plaintiff, who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action, is a state prisoner confined in the Special Offender Unit at Monroe Correctional Complex. He brings claims against Correctional Officer Jerald Grant, Correctional Sergeant Michael Clayton, and Unit Supervisor Jason Neely, in their individual and official capacities. (*See* Dkt. 12.)

There are three motions currently before the Court: defendants' motion to dismiss plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 18); plaintiff's motion for leave to file a second amended complaint that names two additional defendants, Dr. Tanya Browne, plaintiff's psychologist, and Henry Abghari, plaintiff's therapist (Dkts. 24 & 24-

REPORT AND RECOMMENDATION - 1

1  2); and plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 31).

2  Because plaintiff seeks leave to amend to "correct deficiencies in my complaint and to
3  clarify unclear issues" (Dkt. 24-1 at 1), the Court recommends that defendants' motion to dismiss
4  be GRANTED and that plaintiff's amended complaint be dismissed without prejudice.[1]  In
5  addition, for the reasons explained below, the Court recommends that plaintiff's motion for leave
6  to amend be GRANTED in part and DENIED in part, and that plaintiff's motion for a temporary
7  restraining order and preliminary injunction be DENIED.

8  II.    FACTUAL ALLEGATIONS

9  Plaintiff's proposed second amended complaint alleges the following.  Plaintiff has been
10 diagnosed with paranoid schizophrenia, paranoid personality disorder, schizoaffective disorder,
11 and bipolar disorder.  (Dkt. 24-2 at ¶¶ 2-3.)  On countless occasions between 2014 and 2017,
12 Officer Grant falsely announced to staff members that plaintiff has HIV/AIDS.  (*Id.* at ¶¶ 24-25.)
13 In April 2015, Officer Grant told an inmate that plaintiff was "HIV/AIDS positive" and a snitch
14 from California who was in the witness protection program.  (*Id.* at ¶¶ 7-8.)  Officer Grant spread
15 similar rumors among inmates at other times, too.  (*Id.* at ¶¶ 57-58.)

16 Plaintiff asked Officer Grant to stop spreading rumors about him or he would litigate.  (*Id.*
17 at ¶¶ 32-33.)  Officer Grant responded, "So what, you are a paranoid schizophrenic, a judge will
18 never believe you over me. . . . I don't care, do something while you can."  (*Id.* at ¶¶ 33-34.)  After
19 plaintiff began to complain about Officer Grant's behavior, the officer told him that he would be
20 transferred to another institution and away from his family if he continued to write grievances and
21 file litigation regarding the alleged comments.  (*Id.* at ¶¶ 10-13.)  Officer Grant also instructed two
22 inmates to threaten plaintiff with transfer if he continued to file grievances regarding the alleged

23

---

[1] The Court does not discuss this issue further.

REPORT AND RECOMMENDATION - 2

comments and actions. (*Id.* at ¶ 14.)

During the relevant time period, plaintiff spoke to Sergeant Clayton, who is Officer Grant's supervisor, numerous times regarding Officer Grant's behavior. (*Id.* at ¶¶ 43-44.) Sergeant Clayton is aware of plaintiff's mental health conditions but did not correct Officer Grant's behavior, telling plaintiff not to take Officer Grant's comments seriously. (*Id.* at ¶¶ 45-46.)

Plaintiff also informed Dr. Browne and Mr. Abghari, who said they would discuss the issue with Officer Grant. (*Id.* at ¶¶ 26-29, 68-69, 72-73, 85.) When plaintiff followed up, Dr. Browne and Mr. Abghari assured him that they had spoken to Officer Grant and that Officer Grant would no longer exacerbate his mental health symptoms; however, Officer Grant's behavior only worsened. (*Id.* at ¶¶ 31-31; *see also id.* at ¶¶ 38, 40.) Dr. Browne also failed to record plaintiff's complaints in his medical file, and both Dr. Browne and Mr. Abghari failed to take additional action to stop Officer Grant's behavior. (*Id.* at ¶¶ 70, 74, 86.)

In February 2017, plaintiff requested and was granted a meeting with Sergeant Clayton, Officer Grant, and Officer Neely. (*Id.* at ¶¶ 50-51.) During the meeting, plaintiff and Officer Grant discussed the claims in this action; Sergeant Clayton and Officer Neely were completely quiet. (*Id.* at ¶¶ 52-53.) Officer Grant agreed to stop spreading rumors about plaintiff having HIV/AIDS and being in witness protection. (*Id.* at ¶¶ 54-56.) Officer Grant, however, did not stop. (*Id.* at ¶¶ 57-58.)

On April 7, 2017, Officer Neely placed plaintiff in administrative segregation because plaintiff filed a personal restraint petition about Officer Grant. (*Id.* at ¶¶ 59, 61.) Officer Neely told plaintiff, "Since you like writing grievances and complaints, I'm sending you to the hole. Write your complaints from there." (*Id.* at ¶ 64.) Officer Neely fabricated another explanation to justify his actions. (*Id.* at ¶¶ 60, 62, 63.) While plaintiff was in administrative segregation, he lost

his job in the inmate kitchen. (*Id.* at ¶ 65.)

Plaintiff "suffered emotionally" as a result of Officer Grant's rumors regarding HIV/AIDS and the witness protection program. (*Id.* at ¶¶ 16, 19.) Officer Grant's threats made it very difficult for plaintiff to move forward with grievances and litigation against the officer. (*Id.* at ¶ 18.) Also as a result of Officer Grant's actions, plaintiff was placed in administrative segregation and lost his job in the inmate kitchen; ultimately, he was moved to a unit that houses more severe cases of mental illness. (*Id.* at ¶ 20.) Plaintiff also "broke down," losing approximately 40 pounds. (*Id.* at ¶ 42.) He also stopped spending time in the dayroom. (*Id.* at ¶ 75.)

Plaintiff alleges that Officer Grant violated his First Amendment right to be free from retaliation, the Equal Protection Clause, the Eighth Amendment's prohibition against cruel and unusual punishment, and the Americans with Disabilities Act ("ADA"). (*Id.* at ¶¶ 21-22, 35-39, 89-92.) He alleges that Officer Neely violated his rights under the First and Eighth Amendments. (*Id.* at ¶¶ 65, 95-96.) He alleges that Sergeant Clayton violated his rights under the Equal Protection Clause and the Eighth Amendment. (*Id.* at ¶¶ 48-49, 93-94.) Finally, he alleges that Dr. Browne and Mr. Abghari violated his Eighth Amendment rights and the ADA. (*Id.* at ¶¶ 80-81, 87-88, 97-100.)

Plaintiff seeks monetary relief against Officer Grant, Sergeant Clayton, and Officer Neely. (*Id.* at 24.) He seeks declaratory relief against Dr. Browne and Mr. Abghari. (*Id.*)

### III. DISCUSSION

A. <u>Section 1983 standard</u>

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S.

1    42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second

2    prong, plaintiff must allege facts showing how individually named defendants caused or personally

3    participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355

4    (9th Cir. 1981). A plaintiff may not hold supervisory personnel liable under § 1983 for

5    constitutional deprivations under a theory of *respondeat superior* liability. *Taylor v. List*, 880 F.2d

6    1040, 1045 (9th Cir. 1989).

7    B.    Plaintiff's motion for leave to amend

8    Once a responsive pleading has been served, a party may amend its pleading only with the

9    opposing party's written consent or with the court's leave. Fed. R. Civ. P. 15 (a)(2). Courts freely

10   grant leave to amend the pleadings in the absence of bad faith, undue delay, futility, or prejudice

11   to the opposing party. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th

12   Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 183 (1962)).

13   Defendants argue that amendment would be futile. (*See* Dkt. 25.) An amendment is futile

14   "only if it would clearly be subject to dismissal." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,

15   188 (9th Cir. 1987). To avoid dismissal, a complaint must contain sufficient factual matter,

16   accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S.

17   662, 664 (2009). The factual allegations must be "enough to raise a right to relief above the

18   speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint may

19   be dismissed if it lacks a cognizable legal theory or states insufficient facts to support a cognizable

20   legal theory. *Zixiang v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). The Court holds *pro se* plaintiffs

21   to less stringent pleading standards than represented plaintiffs and liberally construes a *pro se*

22   complaint in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

23   As discussed below, plaintiff should be permitted to proceed with some—but not all—of

REPORT AND RECOMMENDATION - 5

1 the claims in his proposed second amended complaint.

2     1. *Retaliation*

3 Plaintiff brings retaliation claims against Officers Grant and Neely. The First Amendment protects prisoners' right to file grievances and pursue civil rights litigation in federal court without retaliation. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Silva v. DiVittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The prisoner must show that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest." *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015) (citing *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997)); *see also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (plaintiff bears burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains). Additionally, "a plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

With respect to Officer Grant, plaintiff alleges that the officer threatened to have him transferred to another institution if he continued to write grievances and file litigation regarding the officer's alleged comments. Plaintiff also alleges that Officer Grant instructed two other inmates to threaten plaintiff in the same way. Plaintiff alleges that Officer Grant's threats made it

REPORT AND RECOMMENDATION - 6

very difficult for him to move forward with grievances and litigation against the officer. Plaintiff also alleges that there was no legitimate correctional justification for Officer Grant's threats. The Court concludes that these allegations are sufficient to state a plausible First Amendment claim against Officer Grant. Defendants do not argue otherwise. (*See* Dkt. 25.)

With respect to Officer Neely, plaintiff alleges that the officer placed him in administrative segregation because he filed a personal restraint petition about Officer Grant. Plaintiff alleges that Officer Neely stated, "Since you like writing grievances and complaints, I'm sending you to the hole." Plaintiff alleges that he lost his job in the inmate kitchen while he was in administrative segregation. He also alleges that Officer Neely fabricated a reason for sending him to administrative segregation, thus suggesting that there was no legitimate correctional goal. As with Officer Grant, the Court concludes that these allegations are sufficient to state a plausible claim that Officer Neely retaliated against plaintiff.

Defendants argue that plaintiff fails to state a claim against Officer Neely because he does not allege why Officer Neely would have a reason to take issue with plaintiff bringing litigation about other staff members. (Dkt. 25 at 7.) The elements of retaliation, however, do not require a plaintiff to explain why. Plaintiff's allegations are sufficient to state a claim, and he should be permitted to proceed with his retaliation claims.

2.      *Equal protection*

Plaintiff brings "class of one" equal protection claims against Officer Grant and Sergeant Clayton. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216

(1982)). "To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal quotations omitted). Alternatively, when an action does not implicate a protected class such a race or religion, a plaintiff may establish a "class of one" equal protection claim by alleging that he has been intentionally treated differently from others similarly situated without any rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Action Apt. Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007). To "'be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects.'" *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Plaintiff fails to state a "class of one" equal protection claim against either defendant. His conclusory allegation that he is a "class of one" is insufficient. He does not allege that other inmates are "similarly situated" to him or that he is treated differently than them. He should not be permitted to proceed with this claim.

3. *Eighth Amendment*

Plaintiff brings Eighth Amendment claims against all five defendants. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 835. Mere negligence on the part of a prison official is not sufficient to establish liability; the official's conduct must have been wanton. *Id.*; *Frost*, 152 F.3d at 1128; *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986).

        a.    *Officer Grant*

Plaintiff's Eighth Amendment claim against Officer Grant is based on the officer's alleged verbal harassment, which was ongoing over the course of several years and allegedly caused plaintiff to break down, suffer a "constant state of mental anguish," and lose approximately 40 pounds. (*See* Dkt. 24-2 at ¶¶ 7-20, 24-34, 38, 41-42, 50-57.) "[V]erbal harassment generally does not violate the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at inmate does not state a constitutional claim)). In *Keenan*, the prisoner alleged that the guards made

1 "disrespectful and assaultive comments" to him. *Id.* In affirming the grant of summary judgment
2 on this claim, the Ninth Circuit concluded that the plaintiff did not present "evidence that these
3 comments were unusually gross even for a prison setting and were calculated to and did cause him
4 psychological damage." *Id.* In this case, by contrast, plaintiff's allegations support the inference
5 that Officer Grant's verbal harassment was calculated to and in fact caused him psychological
6 damage. In addition, given that Officer Grant allegedly persisted with his verbal harassment over
7 several years and despite multiple attempts by plaintiff to get him to stop, the Court concludes that
8 the alleged harassment is sufficiently serious to withstand dismissal at this stage of the litigation.
9 Plaintiff thus states an Eighth Amendment claim against Officer Grant.

10 Defendants argue that the alleged verbal harassment does not rise to the level of a
11 constitutional violation, citing *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997). (Dkt. 25 at
12 6.) In *Somers*, a male prisoner brought Eighth Amendment claims against female guards based on
13 being watched while showering, among other things. *Id.* at 616. The plaintiff alleged that the
14 defendants "pointed at him" and "joked among themselves" while he showered. *Id.* The plaintiff
15 did not allege that the comments were directed at him, intended to humiliate him, or even that he
16 heard what the defendants said. *Id.* The Ninth Circuit rejected his Eighth Amendment claims,
17 noting that he did not allege that the defendants intended to humiliate him. *Id.* at 622. The court
18 also concluded that the alleged "gawking, pointing, and joking" were not objectively harmful
19 enough to establish a constitutional violation. *Id.* at 622-24. Unlike *Somers*, however, plaintiff
20 alleges that Officer Grant acted deliberately over a lengthy period of time and with knowledge of
21 the psychological harm he was causing. The alleged harassment in this case is more serious and
22 harmful than that alleged in *Somers*.

23 Defendants also claim that plaintiff fails to present medical evidence to show that Officer

1 Grant's alleged behavior exacerbated his mental health conditions.  (Dkt. 25 at 6 (citing *Austin v.*
2 *Terhune*, 367 F.3d 1167, 1173 (9th Cir. 2004) (affirming grant of summary judgment to prison
3 officials on Eighth Amendment claim).)  At this stage in the proceedings, however, plaintiff does
4 not need to present evidence to support his claims; he need only allege facts that are sufficient to
5 state a claim.

           b.     *Sergeant Clayton and Officer Neely*

7 Plaintiff's Eighth Amendment claims against Sergeant Clayton and Officer Neely are based
8 on their knowledge of Officer Grant's alleged actions and failure to remedy the situation.  "[A]
9 plaintiff may state a claim against a supervisor for deliberate indifference based upon the
10 supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her
11 subordinates."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  To be held liable, the
12 supervisor need not be "directly and personally involved in the same way as are the individual
13 officers who are on the scene inflicting constitutional injury."  *Id.* at 1205-06.  Rather, the
14 supervisor's involvement "could include his own culpable action or inaction in the training,
15 supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of
16 which the complaint is made, or conduct that showed a reckless or callous indifference to the rights
17 of others."  *Id.*

18 Here, plaintiff's allegations are sufficient to establish that Sergeant Clayton knowingly
19 acquiesced to Officer Grant's ongoing harassment.  Plaintiff alleges that there were numerous
20 occasions when he spoke with Sergeant Clayton about Officer Grant's behavior, and Sergeant
21 Clayton failed to stop the harassment even though he knew about the effect on plaintiff.  The Court
22 concludes that these allegations are sufficient to state an Eighth Amendment claim against
23 Sergeant Clayton.  Defendants argue that plaintiff alleges Sergeant Clayton believed Officer Grant

was being playful. (Dkt. 25 at 8.)  Liberally construing plaintiff's allegations, however, a reasonable inference is that Sergeant Clayton knew Officer Grant was deliberately harassing plaintiff. Defendants' arguments do not alter the Court's conclusion.

With respect to Officer Neely, plaintiff alleges that the officer attended a meeting in February 2017 with plaintiff, Officer Grant, and Sergeant Clayton, at which they talked about the alleged harassment. Officer Grant allegedly agreed to stop harassing plaintiff. Plaintiff alleges that Officer Grant continued harassing him, but he does not allege that he informed Officer Neely. Two months after the meeting, he alleges, Officer Neely placed him in administrative segregation because he filed a personal restraint petition regarding Officer Grant's conduct, but he does not allege that Officer Neely was on notice that Grant's conduct continued or that he knew the situation needed further attention. Officer Neely's alleged involvement with plaintiff and Officer Grant is significantly less than Sergeant Clayton's. Thus, even liberally construing the allegations in plaintiff's favor, the Court concludes that they are insufficient to state an Eighth Amendment claim against Officer Neely.

        c.    *Dr. Browne and Mr. Abghari*

Plaintiff claims that Dr. Browne and Mr. Abghari were deliberately indifferent to his mental health treatment. He claims that he informed them of Officer Grant's alleged harassment and that they failed to stop Officer Grant's behavior. Plaintiff also alleges that Dr. Browne failed to record plaintiff's complaints in his medical file. These allegations are insufficient to state an Eighth Amendment claim against Dr. Browne and Mr. Abghari. Neither Dr. Browne nor Mr. Abghari supervised Officer Grant, and therefore they cannot be held liable for acquiescing to his behavior. Plaintiff also fails to allege that they provided constitutionally deficient mental health care to him. These claims should be dismissed.

4.      *Americans with Disabilities Act*

Plaintiff seeks to bring ADA claims against Officer Grant, Dr. Browne, and Mr. Abghari. Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132; *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Programs or services provided at jails, prisons, and any other custodial or correctional institution are covered by the ADA. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998); *Lee v. City of L.A.*, 250 F.3d 668, 691 (9th Cir. 2001) (mental health services and other activities or services undertaken by law enforcement and correctional facilities come within the meaning of the ADA).

To state a claim of disability discrimination under Title II, plaintiff must allege: (1) he is a "qualified individual with a disability"; (2) he is otherwise qualified to participate in or receive the benefit of the prison's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the prison's services, programs, or activities, or was otherwise discriminated against by the prison; and (4) such exclusion, denial of benefits, or discrimination was because of his disability. *Weinreich*, 114 F.3d at 978.

Plaintiff alleges that Officer Grant violated his rights under the ADA by using his paranoid schizophrenia diagnosis as the justification for continuing the harassment that impeded the mental health treatment to which he was entitled. (Dkt. 24-2 at ¶¶ 36, 90; *see also id.* at ¶ 33 (allegation that when plaintiff told Officer Grant he would litigate if Officer Grant did not stop harassing him, Officer Grant responded, "You are a paranoid schizophrenic, a judge will never believe you over me").) Plaintiff's ADA claims against Dr. Browne and Mr. Abghari are based on the providers' failure to stop Officer Grant's harassment. (*Id.* at ¶¶ 97, 99.)

Even liberally construed, plaintiff's allegations are insufficient to state an ADA claim.

Assuming plaintiff has alleged the first two elements of an ADA claim, fails to allege that Officer Grant, Dr. Browne, or Mr. Abghari excluded him from participating in or discriminated against him in the provision of mental health services because of his disability. Plaintiff does not allege that Officer Grant prohibited him from or interfered with him seeing his mental health care providers, or that Dr. Browne and Mr. Abghari acted inappropriately with respect to his treatment. Plaintiff's ADA claims should be dismissed.

5.  *Summary*

Plaintiff should be permitted to proceed with his First Amendment retaliation claims against Officers Grant and Neely and his Eighth Amendment claims against Officer Grant and Sergeant Clayton. His equal protection claims, Eighth Amendment claims against Officer Neely, Dr. Browne, and Mr. Abghari, and ADA claims should be dismissed.

C.   Plaintiff's motion for temporary restraining order and preliminary injunction

Plaintiff has filed a motion for temporary restraining order and preliminary injunction to ensure that his mail is not tampered with and that his First Amendment rights are secured. (Dkt. 31-1.) To obtain a temporary restraining order, a party must demonstrate: (1) the likelihood of success on the merits; (2) the likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (same substantive standard applies to temporary restraining orders and preliminary injunctions).

The fatal deficiency in plaintiff's motion is that he raises a claim that is not a part of this action, namely interference with his mail. Plaintiff cannot establish a likelihood of success on the merits of a claim that has not been raised in a complaint. And although he alleges First Amendment

REPORT AND RECOMMENDATION - 14

retaliation claims against Officers Grant and Neely in his proposed second amended complaint, neither defendant is directly implicated in the alleged mail interference that underlies the motion for a temporary restraining order and preliminary injunction. Accordingly, the Court recommends denying plaintiff's motion for emergency injunctive relief.

## IV.   CONCLUSION

The Court recommends that defendants' motion to dismiss (Dkt. 18) be GRANTED and that plaintiff's amended complaint be dismissed without prejudice. The Court further recommends that plaintiff's motion for leave to amend (Dkt. 24) be GRANTED in part and DENIED in part. Plaintiff should be permitted to proceed with his retaliation claims against Officers Grant and Neely and his Eighth Amendment claims against Officer Grant and Sergeant Clayton; all other claims and defendants should be dismissed. Finally, the Court recommends that plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 31) be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 29, 2018**.

Dated this 1st day of June, 2018.

Mary Alice Theiler
United States Magistrate Judge