UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMALL BAKER,

                Plaintiff,

    v.

JERALD GRANT, et al.,

                Defendants.

Case No. C17-1678-RSL-MAT

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff, an inmate in the Monroe Correctional Complex Special Offender Unit ("MCC-SOU"), is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. The three defendants are all MCC-SOU employees: Correctional Officer Jerald Grant, Correctional Sergeant Michael Clayton, and Unit Supervisor Jason Neely. Currently before the court are defendants' motion for summary judgment for failure to exhaust administrative remedies (Dkt. 51) and plaintiff's motion to supplement his amended complaint (Dkt. 61). Both motions are opposed. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that defendants' motion for summary judgment be GRANTED in part and DENIED in part and that plaintiff's motion to supplement be DENIED.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

A. Allegations in Plaintiff's Second Amended Complaint

The operative complaint alleges the following.[1] Plaintiff has been diagnosed with paranoid schizophrenia, paranoid personality disorder, schizoaffective disorder, and bipolar disorder. (Dkt. 24-2 at ¶¶ 2-3.) On countless occasions between 2014 and 2017, Officer Grant falsely announced to staff members that plaintiff has HIV/AIDS. (*Id.* at ¶¶ 24-25.) In April 2015, Officer Grant told an inmate that plaintiff was "HIV/AIDS positive" and a snitch from California who was in the witness protection program. (*Id.* at ¶¶ 7-8.) Officer Grant spread similar rumors among inmates at other times, too. (*Id.* at ¶¶ 57-58.)

Plaintiff asked Officer Grant to stop spreading rumors about him or he would litigate. (*Id.* at ¶¶ 32-33.) Officer Grant responded, "So what, you are a paranoid schizophrenic, a judge will never believe you over me. . . . I don't care, do something while you can." (*Id.* at ¶¶ 33-34.) After plaintiff began to complain about Officer Grant's behavior, the officer told him that he would be transferred to another institution and away from his family if he continued to write grievances and file litigation regarding the alleged comments. (*Id.* at ¶¶ 10-13.) Officer Grant also instructed two inmates to threaten plaintiff with transfer if he continued to file grievances regarding the alleged comments and actions. (*Id.* at ¶ 14.)

During the relevant time period, plaintiff spoke to Sergeant Clayton, who is Officer Grant's supervisor, numerous times regarding Officer Grant's behavior. (*Id.* at ¶¶ 43-44.) Sergeant Clayton is aware of plaintiff's mental health conditions but did not correct Officer Grant's behavior, telling plaintiff not to take Officer Grant's comments seriously. (*Id.* at ¶¶ 45-46.)

---

[1] These allegations are taken from the Court's June 1, 2018 Report and Recommendation (Dkt. 33; *see also* Dkt. 40 (adopting R & R)), which recommended granting in part plaintiff's motion for leave to file a second amended complaint.

REPORT AND RECOMMENDATION - 2

In February 2017, plaintiff requested and was granted a meeting with Sergeant Clayton, Officer Grant, and Officer Neely. (*Id.* at ¶¶ 50-51.) During the meeting, plaintiff and Officer Grant discussed the claims in this action; Sergeant Clayton and Officer Neely were completely quiet. (*Id.* at ¶¶ 52-53.) Officer Grant agreed to stop spreading rumors about plaintiff having HIV/AIDS and being in witness protection. (*Id.* at ¶¶ 54-56.) Officer Grant, however, did not stop. (*Id.* at ¶¶ 57-58.)

On April 7, 2017, Officer Neely placed plaintiff in administrative segregation because plaintiff filed a personal restraint petition about Officer Grant. (*Id.* at ¶¶ 59, 61.) Officer Neely told plaintiff, "Since you like writing grievances and complaints, I'm sending you to the hole. Write your complaints from there." (*Id.* at ¶ 64.) Officer Neely fabricated another explanation to justify his actions. (*Id.* at ¶¶ 60, 62, 63.)

Plaintiff "suffered emotionally" as a result of Officer Grant's rumors regarding HIV/AIDS and the witness protection program. (*Id.* at ¶¶ 16, 19.) Officer Grant's threats made it very difficult for plaintiff to move forward with grievances and litigation against the officer. (*Id.* at ¶ 18.) Also as a result of Officer Grant's actions, plaintiff was placed in administrative segregation and lost his job in the inmate kitchen; ultimately, he was moved to a unit that houses more severe cases of mental illness. (*Id.* at ¶ 20.) Plaintiff also "broke down," losing approximately 40 pounds. (*Id.* at ¶ 42.) He also stopped spending time in the dayroom. (*Id.* at ¶ 75.)

Based on the foregoing allegations, the Court allowed plaintiff to go forward with a First Amendment retaliation claim against Officer Grant for threatening to have him transferred if he continued to write grievances, a First Amendment retaliation claim against Officer Neely for placing plaintiff in administrative segregation because plaintiff filed a lawsuit against Officer Grant, an Eighth Amendment claim against Officer Grant based on spreading rumors that plaintiff

REPORT AND RECOMMENDATION - 3

1  has HIV/AIDS and is a snitch, and an Eight Amendment claim against Sergeant Clayton for his
2  failure to stop Officer Grant's harassment. (Dkt. 40 at 1; Dkt. 33 at 6-7, 9-12, 14.)
3  B.     MCC-SOU's Grievance Procedures
4          Defendants have submitted the following evidence regarding the MCC-SOU's grievance
5  program. The program is managed in accordance with the Washington State Department of
6  Corrections' ("DOC") grievance policy and the Offender Grievance Program Manual. (Dkt. 52 at
7  ¶ 3; Dkt. 52-1.) Inmates receive an orientation to the grievance procedure upon their arrival at the
8  facility. (Dkt. 52 at ¶ 5.) Grievance complaint forms are made available to all inmates and copies
9  of the manual are maintained in the prison law library. (*Id.*)
10         Under the program, inmates may file grievances on a wide range of issues relating to their
11 incarceration, including the actions of staff and retaliation by staff for filing grievances. (*See* Dkt.
12 52-1 at 17, 50, 83.) Inmates have twenty working days from the date of an incident to file a
13 grievance, unless there is a valid reason for additional delay. (Dkt. 52 at ¶ 7.) Since 2015, inmates
14 housed in the MCC-SOU file their grievances by placing them in locked grievance boxes located
15 in the housing units, which they can access when they are out of their cells. (Dkt. 63 at ¶ 4.) If an
16 inmate in a segregation unit chooses not to place his grievance in the locked box during his out of
17 cell time, he may request that an officer place the grievance in the locked box by sliding the
18 grievance under the cell door. (*Id.*) In the past couple of years, officers have been supplied with
19 envelopes so that the inmate can place the grievance in a sealed envelope before handing it to an
20 officer, who will then place it in the locked grievance box. (*Id.*)
21         When the grievance coordinator[2] receives an inmate complaint, she follows a standard
22 process to assign and write onto the complaint a Log ID number for tracking purposes, a location
23

---

[2] The current grievance coordinator at the MCC is Louise "Lee" Stemler, who has held the position since April 2016. (Dkt. 63 at ¶ 3.)

REPORT AND RECOMMENDATION - 4

code, and the date she received and responded to the complaint. (*Id.* at ¶ 7.) When she finishes responding to an inmate complaint, she scans and maintains a copy of the completed complaint, and then she enters the information into the Offender Management Network Information ("OMNI") database before she gives the response to the inmate. (*Id.*) According to the current grievance coordinator, she provides responses within five working days and follows the above procedure for every complaint she receives, including complaints that she cannot accept for processing pursuant to DOC policy. (*Id.* at 7-8.)

The grievance procedure consists of four levels of review:

Level 0 – The grievance coordinator receives a written complaint from an inmate and pursues informal resolution; returns the complaint to the inmate for rewriting, for additional information, or because the complaint is non-grievable; or accepts the complaint and processes it as a formal grievance. (Dkt. 52 at ¶ 6.) It is not unusual for the grievance coordinator to receive grievances that need to be rewritten in order to conform to the Offender Grievance Program. (*Id.* at ¶ 9.) An inmate may need to rewrite a grievance when, for example, he has not written a simple, straight-forward statement of concern or when the complaint contains more than one issue. (*Id.*) Inmates are encouraged to talk to the grievance coordinator if they have questions about rewrite instructions. (*Id.* at ¶ 10.) A complaint that is returned for rewriting must be resubmitted within five days or by a date set by the grievance coordinator. (*Id.* at ¶ 6.) A complaint that is not timely resubmitted is deemed administratively withdrawn and unexhausted. (*Id.* at ¶ 11.) When a complaint is returned as non-grievable, the inmate may request a review by the grievance program manager. (*Id.* at ¶ 6.)

Level I – Routine grievances about policies, procedures, or other inmates are initiated as Level I grievances. (*Id.*)

REPORT AND RECOMMENDATION - 5

<u>Level II</u> – An inmate may appeal a Level I grievance to Level II, if he does so within five working days from the time he receives the response to his Level I grievance. (*Id.* at ¶ 7.) Grievances about staff conduct are initiated as Level II grievances. (*Id.* at ¶ 6.)

<u>Level III</u> – An inmate has five working days from receiving a response to his Level II grievance to file a Level III appeal to the DOC Headquarters. (*Id.* at ¶¶ 6-7.) An inmate cannot appeal a Level III decision. (*Id.* at ¶ 7.)

C.     <u>Plaintiff's Relevant Grievance History</u>[3]

On November 18, 2015, the grievance coordinator received Grievance Log ID No. 15598788, in which plaintiff complained, among other things, that Officer Grant told another inmate plaintiff was a snitch. (Dkt. 52-2 at 2.) The grievance coordinator ordered him to rewrite the grievance because he raised more than one issue. (*Id.*) Plaintiff did not rewrite the grievance and it was administratively withdrawn. (*Id.*; Dkt. 52 at ¶ 13.)

On January 15, 2016, the grievance coordinator received Grievance Log ID No. 16603214, in which plaintiff complained that unnamed corrections officers were spreading rumors that he has AIDS. (Dkt. 52-3.) The grievance coordinator instructed plaintiff to rewrite the grievance, but he never did. (*Id.*; Dkt. 52 at ¶ 16.)

On March 17, 2017, the grievance coordinator received Grievance Log ID No. 17629163, in which plaintiff complained about Officer Grant telling another inmate that plaintiff is a "snitch" and has a contagious infectious disease. (Dkt. 52-2 at 8.) The grievance was not accepted because

---

[3] Plaintiff has filed numerous other grievances that are not relevant to this action. (*See* Dkt. 63-1.) Plaintiff also claims he submitted a grievance complaining that Officer Grant told him to get tested for HIV. (Dkt. 60 at 2; Dkt. 60-1 at 41.) The DOC does not have record of this alleged grievance. (*See* Dkt. 63-1.) The Court, however, need not decide whether plaintiff in fact submitted this grievance. Plaintiff's Eighth Amendment claim against Officer Grant is based on the officer spreading rumors. A grievance claiming that Officer Grant told plaintiff to get tested for HIV does not go to the core of this claim. Furthermore, the allegation does not independently rise to the level of a constitutional violation. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (disrespectful and assaultive comments by prison guard not enough to implicate Eighth Amendment).

REPORT AND RECOMMENDATION - 6

1  it was based on hearsay. (*Id.*) Plaintiff appealed this determination on March 21, 2017, and his
2  appeal was denied on March 29, 2017. (*Id.* at 7, 9-11.)
3        On April 11, 2017, the grievance coordinator received Grievance Log ID No. 17630521,
4  in which plaintiff alleged, among other things, "Reprisals are being taken against me for litigating
5  against C/O Grant . . . ." (Dkt. 60-2 at 15.) On April 12, 2017, the grievance coordinator returned
6  the complaint to plaintiff because it was unclear what he was grieving. (*Id.*) According to
7  defendants, plaintiff never rewrote the grievance, and it was administratively withdrawn. (*See id.*
8  ("no rewrite recd").) Plaintiff, however, attests that he rewrote the grievance and put it under his
9  cell door for pickup on April 15, 2017.[4] (Dkt. 59 at 6; Dkt. 60 at 4.) The rewritten grievance
10 states: "I am grieving the fact that [Officer] Neely told me that since I like to write grievances and
11 complaints, he was sending me to the hole. . . . He is retaliating against me for litigating against
12 C/O Grant." (Dkt. 60-2 at 17.) Plaintiff declares that he never received a response, so he submitted
13 a kite on April 21, 2017. (*Id.* at 19.) Plaintiff further declares that when he did not receive a
14 response, he filed appeals on May 2, 2017, and May 15, 2017, which went unanswered. (*Id.* at 20,
15 22.)

16                     III.    DISCUSSION

17 A.    Motion for Summary Judgment

18       Defendants move for summary judgment on the basis that plaintiff failed to exhaust his
19 administrative remedies. Plaintiff concedes that he failed to exhaust his Eighth Amendment claim
20 against Sergeant Clayton and asks that this claim be dismissed. (Dkt. 60 at 2.) He maintains,
21 however, that he should be permitted to proceed with his remaining claims against Officers Grant
22 and Neely. (*See generally* Dkt. 60.)

---

[4] Plaintiff has submitted copies of several documents that have never been entered into the DOC's OMNI database. Plaintiff avers that he writes "everything at least twice." (Dkt. 60 at 5.)

REPORT AND RECOMMENDATION - 7

1      Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust "available" administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The prisoner must complete the administrative review process in accordance with the applicable rules. *Woodford*, 548 U.S. at 92.

Defendants bear the initial burden of showing that there was an available administrative remedy and that plaintiff did not exhaust that remedy. *Albino*, 747 F.3d at 1169, 1172. Once that showing is made, the burden shifts to plaintiff, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with defendants. *Id.*

Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to plaintiff, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a). Any unexhausted claims should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); *Carrea v. California*, 551 Fed. Appx. 368, 369 (9th Cir. 2014) (remanding for the entry of dismissal without prejudice because the proper remedy for non-exhaustion is dismissal without prejudice).

If summary judgment is denied, disputed factual questions relevant to exhaustion should

be decided by the judge at a pretrial evidentiary hearing; plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if the Court finds that plaintiff exhausted his administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

Defendants have submitted evidence regarding MCC-SOU's grievance program, summarized above, that satisfies their initial burden of showing that plaintiff had an available administrative remedy. The Court will turn now to each of plaintiff's three remaining claims.

    1.    *First Amendment Retaliation Claim Against Officer Grant*

Defendants have provided evidence that plaintiff never submitted a grievance complaining that Officer Grant retaliated against him by threatening to transfer him to another facility if he continued to submit grievances. (*See* Dkts. 52 & 63.) Plaintiff did not rebut defendants' evidence on this claim. (*See* Dkts. 58-60.) Therefore, defendants are entitled to summary judgment on this claim.

    2.    *First Amendment Claim Against Officer Neely*

Defendants have presented evidence that plaintiff submitted Grievance Log ID No. 17630521, in which he complained about several events, including that unnamed officers were retaliating against him for filing a state court action against Officer Grant. (Dkt. 52-4 at 2.) The grievance was returned to plaintiff for a rewrite because it was unclear what he was grieving. (*Id.*) According to defendants, plaintiff never submitted a rewrite. (*Id.*) This evidence satisfies defendants' initial burden.

In response, plaintiff avers that he rewrote the grievance to expressly complain about Officer Neely retaliating against him and put the rewrite under his cell door for pickup on April 15, 2017. (Dkt. 59 at 6; Dkt. 60 at 4; Dkt. 60-2 at 17.) According to plaintiff, when he did not

REPORT AND RECOMMENDATION - 9

receive a response, he submitted a kite on April 21, 2017, and appeal forms on May 2, 2017, and May 15, 2017, all of which went unanswered. (Dkt. 60-2 at 19-22.) Plaintiff also has submitted declarations from two fellow inmates in the MCC-SOU, who attest that in their experiences, corrections officers sometimes throw away grievances that they are supposed to put in the locked grievance box. (Dkt. 60-2 at 31-32.) Plaintiff thus maintains that his administrative remedies were "unavailable."

Defendants reply that because the grievance coordinator never received plaintiff's rewrite, kite, or appeals, it is likely that he completed the grievance forms for the purpose of disputing their motion for summary judgment and that the forms were never actually submitted prior to this lawsuit. (Dkt. 62 at 3.)

There are disputed issues of material fact that prevent the Court from deciding on summary judgment whether plaintiff failed to exhaust his administrative remedies or whether the administrative remedies were "unavailable." On one hand, defendants have presented evidence that plaintiff did not exhaust his administrative remedies because they have no record of his alleged rewrite, kite, or two appeals. On the other hand, plaintiff avers that he submitted these documents, and he suggests that if the grievance coordinator did not receive them, it was because a corrections officer failed to follow MCC-SOU policy and put them in the locked grievance box after plaintiff slipped them under his door. *See Nunez v. Duncan*, 591 F.3d 1217, 1229 (9th Cir. 2010) ("Where prison officials have effectively prevented a prisoner from using the available procedures . . . courts have held that administrative remedies were not 'available' for purposes of the PLRA."). Accordingly, defendants' motion for summary judgment on plaintiff's retaliation claim against Officer Neely should be denied and the Court should hold an evidentiary hearing on the issue of exhaustion.

REPORT AND RECOMMENDATION - 10

3. *Eighth Amendment Claim Against Officer Grant*

Defendants argue that Grievance Log ID No. 15598788, which alleged Officer Grant told another inmate plaintiff was a snitch, and Grievance Log ID No. 16603214, which alleged that unnamed corrections officers were spreading rumors that plaintiff has AIDS, were administratively withdrawn because plaintiff failed to rewrite them. Plaintiff does not dispute this evidence.

Defendants also argue that plaintiff failed to exhaust Grievance Log ID No. 17629163, which alleged that Officer Grant told another inmate that plaintiff is a "snitch" and has a contagious infectious disease. Defendants assert that this complaint was not grievable because it was based on hearsay and "[i]f Baker disagreed with the non-grievability decision, he could have filed an appeal. He did not and Grievance Log ID No. 17629163 is not considered to be exhausted under the Offender Grievance Program." (Dkt. 51 at 5.) Defendants, however, misread the record; plaintiff in fact appealed the non-grievability decision on March 21, 2017, and his appeal was denied on March 29, 2017. (Dkt. 52-2 at 7, 9-11.) Therefore, he exhausted his claim that Officer Grant spread rumors that he was a snitch and had a contagious disease, and defendants' motion for summary judgment on this claim should be denied.

B. <u>Motion to Supplement Complaint</u>

Plaintiff moves to supplement his complaint with a new claim against a new defendant. (*See* Dkt. 61.) Specifically, he seeks to bring a First Amendment retaliation claim against Lily Harris, his former supervisor in the inmate kitchen, for firing him because he filed the instant federal lawsuit. (*See* Dkt. 61-1.) Defendants oppose the motion. (Dkt. 65.)

A plaintiff who seeks to add claims that arose after the date he filed his complaint may move to supplement the complaint. *Rhodes v. Robinson*, 621 F.3d 1002, 1006-07 (9th Cir. 2010). Under Federal Rule of Civil Procedure 15(d), "the court may, on just terms, permit a party to serve

REPORT AND RECOMMENDATION - 11

a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Rule 15(d) does not require the moving party to satisfy a transactional test, but there still must be a relationship between the claim in the original pleading and the claims sought to be added. *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988). Thus, "[w]hile leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotation marks and citation omitted); *see also Contreraz v. Stockbridge*, No. 06-cv-01817, 2012 WL 396503, at *1 (E.D. Cal. Feb. 7, 2012) (denying plaintiff's motion to file supplemental complaint because his proposed supplemental allegations gave rise to new causes of action); *Gonzalez v. Mason*, No. 07-180, 2008 WL 2079195, at *2 (N.D. Cal. May 15, 2008) (denying plaintiff's motion to file supplemental complaint because the proposed supplement included different defendants and new claims). "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*, 668 F.2d 1014, 1057 (9th Cir. 1981) (internal citations omitted).

Here, plaintiff's proposed claim against Ms. Harris should not be added to this lawsuit. His new proposed claim is separate and distinct from his current claims against Officers Grant and Neely, and it gives rise to a new cause of action against a different defendant. In addition, allowing plaintiff to pursue his proposed supplemental claim would not promote judicial efficiency, the goal of Rule 15(d). *See Planned Parenthood*, 130 F.3d at 402; Fed. R. Civ. P. 18(a) ("A party asserting a claim . . . may join, [ ] as independent or as alternative claims, as many claims . . . as the party has against an opposing party"); Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same transaction requirements are satisfied). Finally, there are no

REPORT AND RECOMMENDATION - 12

"technical obstacles" to plaintiff bringing a separate action against Ms. Harris. *See Planned Parenthood*, 130 F.3d at 402. Accordingly, plaintiff's motion to supplement his complaint should be denied without prejudice to raising the proposed new cause of action in a separate lawsuit.

## IV.    CONCLUSION

The Court recommends that defendants' motion for summary judgment (Dkt. 51) be GRANTED in part and DENIED in part. Summary judgment should be granted as to plaintiff's First Amendment retaliation claim against Officer Grant and his Eighth Amendment claim against Sergeant Clayton, and these claims should be dismissed without prejudice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); *Carrea v. California*, 551 Fed. Appx. 368, 369 (9th Cir. 2014) (remanding for the entry of dismissal without prejudice because the proper remedy for non-exhaustion is dismissal without prejudice). Summary judgment should be denied as to plaintiff's First Amendment retaliation claim against Officer Neely and his Eighth Amendment claim against Officer Grant. Plaintiff exhausted his claim against Officer Grant, and the Court should hold an evidentiary hearing regarding exhaustion of his claim against Officer Neely.

The Court also recommends that plaintiff's motion to supplement his complaint (Dkt. 61) be DENIED without prejudice to plaintiff bringing his claim in a separate lawsuit.

A proposed order that details these recommendations accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

REPORT AND RECOMMENDATION - 13

and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 30, 2018**.

Dated this 7th day of November, 2018.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14